James E. JOHNSON, Appellant
(Defendant Below),

v.

STATE of Indiana, Appellee
(Plaintiff Below).

No. 48S00–9904–CR–263.

Supreme Court of Indiana.

Aug. 17, 2000.

Patrick R. Ragains, Anderson, Indiana, Attorney for Appellant.

Karen Freeman–Wilson, Attorney General of Indiana, Arthur Thaddeus Perry, Deputy Attorney General, Indianapolis, Indiana, Attorneys for Appellee.

SHEPARD, Chief Justice.

James Johnson was convicted on two counts of murder for the shooting deaths of Andrea Rathel and Lincoln Anderson. He presents three issues in this direct appeal:

I.    Whether the trial court properly permitted evidence that the crime took place on a date other than the date specified in the charging information,

II.   Whether the trial court properly admitted evidence of prior acts by Johnson, and

III.   Whether the trial court properly excluded statements made by Mark Tulowitzky, who Johnson claims was another possible suspect in the crime.

I.  Before Midnight or After?

Johnson first contends that the trial court erred in allowing the State to introduce evidence that the murders took place in the early morning hours of April 23, 1998, because the charging information alleged that the crime occurred on or about April 22, 1998. Johnson further argues that because he filed a notice of alibi, which the State did not answer, the State is strictly limited to the date alleged in the information and should not have been allowed to vary from the information.

Johnson's brief tends to suggest that the State somehow defaulted by not responding to his notice of alibi. This is not the case. The State is not required to respond to an alibi notice if it intends to rely on the date and place alleged in the information. *Joyner v. State,* 678 N.E.2d 386 (Ind.1997). Filing an alibi notice does not impose a greater burden of proof on the State than would otherwise exist. *Jennings v. State,* 514 N.E.2d 836, 837 (Ind.1987). While an alibi filing does render the time of the offense critical or "of the essence," *id.,* we have nevertheless observed:

> [A]lthough time becomes of the essence when the alibi statute has been invoked, it is also well settled that a variance, in order to be fatal, must be of such substantial nature as to mislead the accused in preparing and maintaining his defense or be of such a degree as is likely to place him in second jeopardy for the same offense.

*Quillen v. State,* 271 Ind. 251, 253, 391 N.E.2d 817, 819 (1979).

Here, the charging information alleged that Johnson killed Rathel and Lincoln "[o]n or about the 22nd day of April, 1998," (R. at 14), while the probable cause affida-

vit said that the crime occurred sometime between 10 p.m. on April 22, 1998, and 7:34 a.m. on April 23, 1998, (R. at 16).

The State presented evidence at trial that Andrea Rathel received a phone call from Johnson at 12:51 a.m., April 23, 1998. The call came from the residence of Thomas Johnson, James Johnson's father, with whom Johnson lived.[1] Rathel's neighbors testified that they heard loud banging noises around 1:15 to 1:30 a.m. Arielle Johnson, Rathel's daughter, also said that she went to bed around 10 p.m. on April 22, but was awakened during the night by her mother talking on the phone. Shortly thereafter, Arielle heard loud banging noises in rapid succession. After the banging stopped, she called to her mother, but did not receive a response, and fell back asleep. The next morning, she discovered Rathel and Anderson in bed, both dead.

Thus, the State argued that the crime occurred in the early morning hours of April 23, 1998. This variance from the charging information, which alleged that the crime occurred "on or about" April 22, 1998, is not material. Moreover, Johnson does not allege prejudice. No error here.

## II. Hearsay Claims Mostly Waived

Three witnesses testified about prior hostile acts by Johnson toward Rathel and Anderson. First, Anderson's ex-wife, Christina Reis, testified that Johnson had on prior occasions peered into the windows of Rathel's trailer home. Second, Officer John Coogan testified that Johnson and Anderson were involved in a physical altercation during 1992. Finally, Officer Chris Mally testified that Johnson destroyed Rathel's car radio in 1993.

■ Johnson claims that these statements were inadmissible hearsay.

Reis' statement is not hearsay. Reis, a close friend of Rathel, testified that she spent a lot of time at Rathel's trailer home and observed Johnson looking into the windows on several occasions. Her statements were limited to her own observations.

■ As for Officer Mally's statements, any claim of error has been waived because defense counsel did not object to the admission of the statements at trial. "Failure to object at trial waives any claim of error and allows otherwise inadmissible hearsay evidence to be considered for substantive purposes and to establish a material fact at issue." *Allen v. State*, 686 N.E.2d 760, 775 (Ind.1997), *cert. denied*, 525 U.S. 1073, 119 S.Ct. 807, 142 L.Ed.2d 667 (1999).

The same is true of Officer Coogan's statements. Defense counsel did not object at trial to Coogan's statements regarding a fight between Johnson and Anderson, so nothing is preserved for appeal. *Id.*

## III. Excluding Testimony by Possible Perpetrator

■ Johnson also contends that the trial court erred in excluding evidence of certain statements made by Mark Tulowitzky.

According to Johnson, Tulowitzky had a motive to kill Lincoln Anderson and made several incriminating statements regarding Anderson's death. On September 4, 1998, Tulowitzky was arrested by Officer Tony Patz after an altercation at a bar. As Patz was taking Tulowitzky to jail, he drove past a business owned by Anderson's brother. While driving by the business, Tulowitzky said "Burn, [m-f], burn." (R. at 1494.) He told Patz that Anderson got what he deserved. Tulowitzky had earlier told another officer that he felt no emotion over Anderson's death but that his "heart does bleed for Rathel and the children." (R. at 1372.) The court sustained objections to the admission of these statements.

■ The balance of relevance and prejudice in evaluating proffered evidence is within the trial court's sound discretion, and we will not disturb such rulings absent

---

1. A call from Thomas Johnson's residence appeared on Rathel's caller ID box at this time. (R. at 947.)

 

an abuse of discretion. *Roche v. State,* 690 N.E.2d 1115 (Ind.1997). Here, aside from these statements, there is nothing to suggest that Tulowitzky may have been the killer. When questioned by defense counsel outside of the presence of the jury, Tulowitzky denied stating that he had killed Anderson or that he had predicted Anderson's death. Defense counsel then acknowledged that he had no evidence that anyone "heard Mr. Tulowitzky say either of these statements." (R. at 1377.) If there had been any additional evidence tending to establish that Tulowitzky was the perpetrator, then these statements would be probative. Standing alone, however, they do not raise this likelihood and thus do not make any fact of consequence more or less probable. *See* Ind. Evidence Rule 401.

■ Moreover, there is substantial evidence supporting Johnson's guilt. On the evening of the murders, Andrea Rathel received a phone call from the residence of Thomas Johnson, James Johnson's father, with whom James Johnson lived. Following the murders, police observed footprints in a freshly-tilled garden near Rathel's trailer. The shoes Johnson had been wearing on April 22 matched the footprints in the garden. Near Rathel's trailer, police also observed two indentations in the ground resembling kneeprints. The pants that Johnson had been wearing on the morning of April 23 had mud on the knees. Finally, the shell casings and bullets recovered from the murder scene were matched to a firearm found in Johnson's bedroom.

The trial court exercised appropriate discretion in excluding Tulowitzky's statements.

### Conclusion

We affirm the judgment of the trial court.

DICKSON, SULLIVAN, BOEHM, and RUCKER, JJ., concur.