**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

May 28 2013, 9:30 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**RYAN P. DILLON**
Franklin, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**BRIAN REITZ**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| RICHARD B.E. SPOON, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No.  55A04-1205-CR-253 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE MORGAN SUPERIOR COURT
The Honorable Jane Spencer Craney, Judge
Cause No. 55D03-1109-FB-1179

**May 28, 2013**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**PYLE, Judge**

STATEMENT OF THE CASE

Richard B.E. Spoon ("Spoon") appeals, following a bench trial, his conviction and sentence for Class B felony child molesting.[1]

We affirm.

ISSUES

1.  Whether the trial court abused its discretion by admitting into evidence Spoon's two videotaped interviews with police.

2.  Whether sufficient evidence supports Spoon's conviction.

3.  Whether Spoon's advisory sentence is inappropriate pursuant to Indiana Appellate Rule 7(B).

FACTS

In August 2011, nineteen-year-old Spoon was dating M.H., who had three children: daughters, M.T. and J.H.; and son, E.H (collectively, "the Children"). On or about August 14 or 15, 2011, Spoon went to M.H.'s house to spend the night after he got off work. When he arrived around 1:00 a.m., M.H. was asleep in her bedroom, and the Children were asleep in another bedroom ("the girls' bedroom"). Spoon asked M.H. to go buy alcohol for him, but she refused. Spoon then asked a neighbor, Caleb Favor ("Favor"), to go to the liquor store. Spoon and Favor went back to M.H.'s house and drank some Captain Morgan rum.

Later, Spoon went up to the girls' bedroom—where twelve-year-old M.T. and eight-year-old J.H. were sleeping in one twin bed while five-year-old E.H. was sleeping

---

[1] Ind. Code § 35-42-4-3.

in another—and he started to watch television. M.T. then awoke to Spoon rubbing her arm. M.T. turned to the side, scooted closer to J.H, and pretended to be asleep. Spoon got into bed next to M.T. and began rubbing her leg. Spoon then pulled down M.T.'s underwear and inserted his finger into her vagina. Spoon then "squeezed" M.T.'s breasts, both over and under the bra she was wearing. (Tr. 53).[2] Spoon next "tried to put his penis in [M.T.'s] butt[,]" but he was unable to do so. (Tr. 53). Spoon then grabbed M.T.'s hand, put it on his penis—which felt "squishy"—and said "come on, babe." (Tr. 55). Spoon then fell off the bed and went to the other bed where E.H. was sleeping. E.H. woke up and went to sleep in M.H.'s bed.

The next morning, M.H. awoke to find E.H. in her bed and Spoon in the girls' bedroom. When M.H. asked Spoon about the unusual sleeping arrangements, Spoon told her that he had watched a television in the girls' room. He also indicated that the girls would be angry with him because he had tried twice to climb into bed with them.

A few days later, around August 20, 2011, M.T. told her grandmother what Spoon had done to her. M.T.'s grandmother then called M.H. to inform her. M.H. called Spoon to "cuss him out" and ask him what had happened. (Tr. 19). Spoon "just sat there" and "didn't say anything." (Tr. 19). M.H. then called the police. M.T. was taken to Susie's Place for a forensic interview, during which she indicated that Spoon had molested her.

On August 24, Mooresville Police Detective Brad Yarnell ("Detective Yarnell") located Spoon at his grandmother's, Mildred Spoon ("Grandmother Spoon"), house and

---

[2] We have two separately-bound transcript volumes for this appeal. We will refer to the bench trial transcript as (Tr.) and to the suppression hearing transcript as (Hrg. Tr.).

3

transported Spoon to the police department to discuss M.T.'s allegations. At the police station, Detective Yarnell videotaped his interview with Spoon ("Interview #1"), which began around 11:00 a.m. Detective Yarnell informed Spoon of his *Miranda* rights, and Spoon signed a waiver of those rights. Detective Yarnell told Spoon that he needed to question him about an inappropriate touching that M.T. alleged happened on August 15, which would have been a Monday. During Interview #1, Spoon stated that he had been drinking alcohol and he did not remember what had happened. Interview #1 ended around 11:35 a.m., and Spoon left the police station.

A few hours later—after Detective Yarnell obtained a search warrant to obtain a sample of Spoon's DNA—Spoon returned to the police department ("Interview #2"). Interview #2 was also videotaped. Detective Yarnell asked Morgan County Sheriff Detective Brent Worth ("Detective Worth"), who was also an evidence technician, to collect Spoon's DNA via a buccal swab. Spoon arrived for Interview #2 at 2:45 p.m., which started about three hours after Interview #1 ended. Detective Worth explained the search warrant to Spoon, confirmed he had been advised of his *Miranda* rights, and asked if he understood those rights. Spoon stated that he understood his rights. Detective Worth talked to Spoon about the allegations against him from August 15, and Spoon repeatedly claimed he could not remember that night. Spoon indicated that he needed to go to work, and Detective Worth took Spoon's DNA sample.[3] Thereafter, Detective Yarnell came into the interview room to "jog" Spoon's memory about which day the

---

[3] Later DNA testing indicated that Spoon was excluded from any DNA on the comforter and sheets.

occurrence happened and told Spoon that it was the night that he drank rum with Favor and when M.H. found him sleeping in the girls' bedroom. (State's Exhibit 3). Detective Yarnell told Spoon that he knew that he had to leave but that he hoped Spoon would try to help himself. Spoon then stated that he remembered falling off the bed and waking up in the other bed. Spoon acknowledged that he knew he did something wrong and then stopped. He stated that "it's like a fucked up movie that keeps skipping." (Exhibit 3). When the detectives asked if Spoon remembered touching M.T., Spoon admitted that he "remember[ed] touching her boobs" but claimed that he did not remember anything else. (Exhibit 3). At the conclusion of Interview #2, which lasted less than forty-five minutes, Spoon left the police station and went to work.

On September 7, 2011, the State charged Spoon with Class B felony child molesting (based on deviate sexual conduct) and Class C felony child molesting (based on fondling) and alleged that the crimes occurred "on or about August 16, 2011[.]" (App. 127). Thereafter, Spoon filed a notice of alibi defense, claiming that he "was residing and was physically at" Grandmother Spoon's house "on August 16, 2011, the date that this offense is alleged to have occurred." (App. 103). The State then amended the charging information to allege that Spoon had committed the offenses "on or about August 14 and 15, 2011[.]" (App. 102). Subsequently, Spoon filed a second notice of alibi defense, claiming that he "was residing and was physically at" Grandmother Spoon's house "on August 14-15, 2011, the evening and morning that this offense is alleged to have occurred." (App. 98).

5

Spoon then filed a motion to suppress Interview #1 and Interview #2, claiming that his statements made in the interviews were in violation of his *Miranda* rights and that his statements were not voluntary because they were obtained as a result of a promise of leniency and overbearing police tactics. Following a hearing, the trial court denied Spoon's motion to suppress.

The trial court held a bench trial on March 28, 2012. During opening statements, Spoon's counsel argued that the State would not present sufficient evidence because M.T. had stated during her deposition—and was expected to testify during the bench trial—that she did not remember all the events surrounding the alleged crimes until she had reviewed a document to refresh her memory.

During the bench trial, M.H. and M.T. testified that Spoon was at their house on August 14 or 15. Thirteen-year-old M.T. testified that Spoon had inserted his finger in her vagina, fondled her breasts, attempted to insert his penis into her buttocks, and forced her to put her hand on his penis. While testifying on direct examination, M.T. testified she had some difficulty remembering the order that Spoon did these events. Spoon's attorney cross-examined M.T. about how she had used a transcript from her interview at Susie's Place to refresh her memory prior to her deposition, which was apparently taken the Friday before trial. M.T. indicated that she "had forgotten" and that after she "read the paper[,] it all came back to [her]." (Tr. 61). On redirect, the State had M.T. clarify that she merely had difficulty remembering the order of what Spoon had done to her but

6

that she remembered the actual things that he had done to her. Spoon did not object to M.T.'s testimony or move to strike any portion of it.

When the State moved to admit Spoon's two videotaped police interviews—State's Exhibit 1 (Interview #1) and State's Exhibit 3 (Interview #2)—Spoon objected and argued that they were inadmissible because: (1) the statements were obtained unlawfully during a custodial interrogation and in violation of his *Miranda* rights; (2) the statements were involuntarily obtained via overbearing police tactics and promises of leniency; and (3) the interviews were more prejudicial than probative because they bolstered the victim's testimony and contained hearsay statements of the victim. The trial court overruled Spoon's objections and admitted both interviews into evidence.

During Spoon's case-in-chief, the trial court took judicial notice, upon Spoon's request, that August 14 and 15, 2011 were a Sunday and Monday. Spoon attempted to support his alibi defense by calling his grandmother as a witness and by testifying himself. Grandmother Spoon testified that Spoon was staying at her house in August 2011 and that she knew he was at her house on August 13, 2011. However, she could not recall if he was at her house on August 14 or 15. Grandmother Spoon also testified that she knew that Spoon stayed the night at other people's houses, including staying at M.H.'s house.

Spoon testified that he did not go to M.H.'s house on August 14 and 15, 2011. Spoon testified that he went to work on August 14 and 15 and then went back to Grandmother Spoon's house because he was sick. On cross-examination, Spoon

7

acknowledged that he did not tell police that he was sick or at Grandmother Spoon's house, and he claimed that he had lied to police during his interview when he told them that he was at M.H.'s house and that he got into bed with M.T.

Following Spoon's presentation of evidence, he moved for a directed verdict, arguing that the State had not presented any evidence to support that the offenses occurred on August 14 or 15 as alleged in the charging information. Spoon's attorney argued that M.H. and M.T. had testified that the alleged crime occurred on a Tuesday, which would have been August 16 and was not the date set forth in the charging information. Spoon's attorney cited to caselaw and argued that, because the State had not responded to Spoon's second notice of alibi, the trial court could exclude any of the State's evidence regarding the date of the offense. The State responded that it had amended the charging information to allege that the offenses occurred "on or about August 14th/15th" and that it was not required to prove an exact date. (Tr. 101). The State also cited to caselaw and asserted that in notice of alibi cases, it was only required to charge with a "reasonableness of specificity" and argued that it had presented evidence that the offenses occurred on or about August 14 or 15. (App. 101). The trial court denied Spoon's motion for directed verdict.

Following closing arguments, the trial court stated that it had "no doubt that [M.T.] was molested by Mr. Spoon at all." (Tr. 115). The trial court stated that it was going to take the case under advisement to look at the parties' caselaw to make a determination of whether the State had presented sufficient evidence to overcome

8

Spoon's notice of alibi. Later that day, the trial court issued an order providing that "the State's position is correct" and that "[t]ime is not of the essence, even when an Alibi Notice has been filed, in child molesting cases with very limited exceptions." (App. 31). The trial court found Spoon guilty of both counts of child molesting as charged.

The trial court held a sentencing hearing on April 26, 2012. The trial court found as mitigating circumstances Spoon's "youthful age" and the fact that incarceration would cause undue hardship to his nineteen-month-old dependent. The trial court found Spoon's criminal record, all of which involved substance abuse, to be an aggravating circumstance. The trial court merged the Class C felony child molesting conviction into the Class B felony child molesting conviction and imposed the advisory sentence of ten (10) years for Spoon's Class B felony conviction. The trial court stated that it was recommending that Spoon receive drug and alcohol counseling and participate in a sex offender program. The trial court stated that if Spoon completed these programs, it would consider a modification of his sentence to the minimum term of six (6) years. Spoon now appeals his conviction and sentence.

DECISION

## 1. Admission of Evidence

Spoon argues that the trial court abused its discretion by admitting evidence during the bench trial. Specifically, Spoon contends that the trial court abused its discretion by admitting (a) his first videotaped police interview and (b) his second videotaped police interview.

The admission and exclusion of evidence falls within the sound discretion of the trial court, and we review the admission of evidence only for an abuse of discretion. *Wilson v. State*, 765 N.E.2d 1265, 1272 (Ind. 2002). An abuse of discretion occurs when the trial court's decision is clearly against the logic and effect of the facts and circumstances before it. *Conley v. State*, 972 N.E.2d 864, 871 (Ind. 2012), *reh'g denied*.

A. *First Videotaped Interview*

Spoon first argues that the trial court abused its discretion by admitting into evidence his first videotaped police interview, Interview #1, which was admitted as State's Exhibit 1. Spoon generally contends that Interview #1 was more prejudicial than probative and should have been excluded under Indiana Evidence Rule 403 because the interview allowed the police to "discuss the case in front of the trier of fact" and to introduce hearsay statements, which "invad[ed] the providence of the trier of fact" and bolstered M.T.'s credibility and testimony.[4] (Spoon's Br. 7).

Under Evidence Rule 403, a trial court may exclude relevant evidence if its "probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence." In applying the balancing test of Evidence Rule 403, the trial court has "wide latitude," and its determination is reviewed for an abuse of discretion. *Willingham v. State*, 794 N.E.2d 1110, 1116 (Ind. Ct. App. 2003). Our Indiana Supreme Court has "emphasized that the relevant inquiry is not merely whether

---

[4] Spoon specifically argues that Interview #1 should have been excluded under Evidence Rule 403 and makes no specific citation to Evidence Rules 704 or 801.

the matter is prejudicial to the defendant's interests, but whether 'it is *unfairly* prejudicial.'" *Baer v. State*, 866 N.E.2d 752, 763 (Ind. 2007) (quoting *Steward v. State*, 652 N.E.2d 490, 499 (Ind. 1995), *reh'g denied*), *cert. denied*.

During Interview #1, Detective Yarnell reviewed the allegations that M.T. had made against Spoon. Spoon stated that he had been drinking alcohol and claimed that he did not remember what had happened that night. The detective made statements indicating that he believed that something happened and was of the opinion that Spoon touched M.T.

Here, Spoon has failed to show that the trial court abused its discretion by admitting Interview #1 into evidence. On appeal, Spoon acknowledges that the police "gained no information from Spoon as a result of this interview" and that his statements made in Interview #1 were not prejudicial to the extent that his statements were inadmissible and would require reversal of the trial court's ruling. (Spoon's Br. 7). Moreover, with respect to the detective's statements made in Interview #1, we conclude that Spoon has waived any argument challenging the trial court's admissibility ruling. While Spoon objected to the admission of Interview #1 at trial, he objected to the admission of the entire interview and did not—and does not on appeal—cite to the specific statements made by the detective that he alleges were inadmissible as prejudicial, hearsay, or improper vouching. Under Indiana Evidence Rule 103(a), "[e]rror may not be predicated upon a ruling which admits . . . evidence unless a substantial right of the party is affected, and . . . a timely objection or motion to strike appears of record, stating the

11

specific ground of objection, if the specific ground was not apparent from the context . . .

." Additionally, Spoon cites to limited authority and does not develop cogent argument showing why Interview #1 should have been excluded in its entirety. *See* Ind. Appellate Rule 46(A)(8)(a). Accordingly, we conclude that the trial court did not abuse its discretion by admitting Interview #1 (State's Exhibit 1) into evidence.

B. *Second Videotaped Interview*

Spoon also argues that the trial court abused its discretion by admitting into evidence his second videotaped police interview, Interview #2, which was admitted as State's Exhibit 3. Specifically, Spoon contends that Interview #2 was improperly admitted because: (1) he was not re-advised of his *Miranda* rights before Interview #2; and (2) his statements were not voluntary because they were obtained by promises of leniency and overbearing interrogation tactics.

Turning to Spoon's first argument, we note that Spoon does not dispute the fact that he was advised of his *Miranda* rights at the beginning of Interview #1. Instead, he contends that he should have been re-advised of his *Miranda* rights prior to Interview #2. We disagree.

"'The purpose underlying *Miranda* warnings is to protect an individual's Fifth Amendment privilege against self-incrimination by placing reasonable limitations on police interrogations.'" *Hendricks v. State*, 897 N.E.2d 1208, 1214 (Ind. Ct. App. 2008) (quoting *Sauerheber v. State*, 698 N.E.2d 796, 801 (Ind. 1998)). Our Indiana Supreme Court has explained that a second *Miranda* advisement is not always necessary when an

12

interruption occurs between police interviews. For example, in *Shane v. State*, our Supreme Court explained that, after a defendant has been given a *Miranda* advisement in an initial interview, the advisement does not need to be repeated in a later interview "if the circumstances surrounding the interruption or adjournment of the process have not deprived the suspect of the opportunity to make an informed and intelligent assessment of his interests involved in the interrogation." *Shane v. State*, 615 N.E.2d 425, 427 (Ind. 1993) (citing *Moredock v. State*, 514 N.E.2d 1247 (Ind. 1987)). "The rationale is that if the interruption is part of a continual effort by the police to gather information from the suspect, there can be little doubt as to the suspect's interests in the matter." *Id.*

More recently, our Supreme Court stated:

Although it might be the better practice to reiterate such warnings after an interruption of questioning, a readvisement is only necessary when the interruption deprived the suspect of an opportunity to make an informed and intelligent assessment of his interests. If the interruption is part of a continual effort to investigate the suspect, then the suspect's interests remain fairly clear.

*Wilkes v. State*, 917 N.E.2d 675, 683 (Ind. 2009) (quoting *Ogle v. State*, 698 N.E.2d 1146, 1149 (Ind. 1998) and citing 2 Wayne R. LaFave et al., *Criminal Procedure* § 6.8(b) (3d ed. 2007) ("It is generally accepted that fresh warnings are not required after the passage of just a few hours.")), *reh'g denied*, *cert. denied*.

Here, Spoon went to the police station for Interview #1 at 11:04 a.m. Detective Yarnell advised Spoon of his *Miranda* rights, and Spoon signed a waiver of those rights. The detective informed Spoon of M.T.'s allegations against him, and Spoon stated he had

13

been drinking with Favor and could not recall it happening. Detective Yarnell told Spoon that they would send the bedding and M.T.'s undergarments for forensic testing and told Spoon that if there was anything on the sheets, they would find it. Detective Yarnell told Spoon that he was going to talk to Favor to see how much they drank and go from there. Interview #1 ended at 11:37 a.m., and Spoon left the police station.

Thereafter, Detective Yarnell secured a search warrant to obtain a DNA buccal swab and contacted Spoon to return to the police department for the sample. Spoon arrived for Interview #2 at 2:45 p.m., which was a little more than three hours after Interview #1 ended. Detective Worth explained the search warrant to Spoon, and Spoon indicated that Detective Yarnell had talked to him about the warrant. Detective Worth then verified that Detective Yarnell had read Spoon his *Miranda* rights and asked if Spoon understood those rights. Spoon stated that he understood his rights. Detective Worth talked to Spoon about the allegations against him for about fifteen minutes, and Spoon again claimed he could not remember that night. After Spoon indicated that he needed to go to work, Detective Worth took Spoon's DNA sample. Thereafter, Detective Yarnell joined Spoon and Detective Worth in the interview room and clarified to Spoon that the allegations against him occurred on the night that he drank rum with Favor and when M.H. found him sleeping in the girls' bedroom. Detective Yarnell told Spoon that he knew that he had to leave but that he hoped Spoon would try to help himself. Spoon then stated that he remembered falling off M.T.'s bed and waking up in the other bed. Spoon ultimately admitted that he "remember[ed] touching her boobs" but claimed that

14

he did not remember anything else. (Exhibit 3). At the conclusion of Interview #2, which lasted less than forty-five minutes, Spoon left the police station and went to work.

Given the specific circumstances in this case, we conclude that the interruption between Interview #1 and Interview #2 was part of a continual effort to investigate and gather information about Spoon. Spoon went to the police station, received the *Miranda* advisement, voluntarily waived those rights, returned to the station after a search warrant was obtained, verified that he had been advised of and understood his *Miranda* rights, and then spoke to police and ultimately admitted that he fondled M.T.'s breasts. Because the interruption did not deprive Spoon of the opportunity to make an informed and intelligent assessment of his interests, a readvisement of *Miranda* rights prior to Interview #2 was not necessary. *See, e.g.*, *Wilkes*, 917 N.E.2d at 683 (holding that defendant was not entitled to a *Miranda* readvisement where his second interview occurred less than four hours after his first interview ended); *Shane*, 615 N.E.2d at 428 (holding that police were not required to re-read *Miranda* warnings where the defendant had received *Miranda* warnings, went to a hospital for collection of blood and hair samples, returned to the police station where he confirmed that he understood his *Miranda* rights, and then gave a statement to police).[5]

---

[5] Spoon relies on *Edwards v. State*, 412 N.E.2d 223 (Ind. 1980) to argue that he was entitled to a re-advisement of his *Miranda* rights and that the failure to do so required the trial court to exclude Interview #2 from evidence. However, we find *Edwards* distinguishable. In *Edwards*, the police readvised the defendant of his *Miranda* rights during his second police interview. The issue on appeal in *Edwards* was whether the *content* of the second *Miranda* warning was sufficient. The issue was not—as it is here—whether a second advisement was necessary or whether the interruption between police interviews is part of a continual effort by the police to gather information.

Next, we turn to Spoon's argument that Interview #2 should have been excluded from evidence because his statements were given as a result of promises of leniency and overbearing police tactics. Specifically, Spoon contends that his statements made during Interview #2 were involuntary because the detectives stated that if he confessed he would merely receive alcohol counseling and "insinuate[d]" that there would be "no ramifications and that his statement would be "given under a blanket of immunity." (Spoon's Br. 11).

The decision to admit a defendant's statement is a "matter of discretion of the trial court after considering the totality of the circumstances." *Miller v. State*, 770 N.E.2d 763, 767 (Ind. 2002). "'When reviewing a challenge to the trial court's decision, we do not reweigh the evidence but instead examine the record for substantial, probative evidence of voluntariness.'" *Id.* (quoting *Schmitt v. State*, 730 N.E.2d 147, 148 (Ind. 2000)). When looking at the totality of the circumstances from all the evidence, the following factors may be considered: "the crucial element" of police coercion; the length, location, and continuity of the interrogation; and the defendant's maturity, education, physical condition, and mental health. *Id.* (internal citations omitted). "A confession is inadmissible if it is obtained by promises of mitigation or immunity; however, vague and indefinite statements by the police that it would be in a defendant's best interest if he cooperated do not render a subsequent confession inadmissible." *Clark v. State*, 808 N.E.2d 1183, 1191 (Ind. 2004). Additionally, a confession is voluntary if it is the product of a rational intellect and not the result of physical abuse, psychological

16

intimidation, or deceptive interrogation tactics that have overcome the defendant's free will. *Scalissi v. State*, 759 N.E.2d 618, 621 (Ind. 2001). Appellate courts "must determine, in light of the totality of circumstances, whether the police conduct overbore the defendant's will, thus rendering his statement involuntary." *Miller*, 770 N.E.2d at 768.

Here, the record reveals that Spoon went to the police station for Interview #2, arriving around 2:45 p.m. Spoon was not restrained while in the interview room. Detective Worth talked with Spoon for about fifteen minutes, asking Spoon if he remembered anything about the night of the allegations and inquiring whether it was just an accident or a mistake. After Spoon indicated that he had to go to work, Detective Worth took a cheek swab for Spoon's DNA sample pursuant to the search warrant. Thereafter, Detective Yarnell went into the room. The detectives then talked to Spoon about the allegations in light of having an alcohol problem and making a mistake versus being a child molester. Detective Yarnell told Spoon that he knew he needed to go to work but that he hoped Spoon would "see the light" and try to help himself. (State's Ex. 3). Thereafter, Spoon acknowledged that he remembered falling off that bed that night and later admitted that he had touched M.T.'s breasts. Then Interview #2 ended, less than forty-five minutes after it started, and Spoon went to work.

After reviewing the video recording of Interview #2 and considering the totality of the circumstances, we conclude that there is substantial evidence to support the trial court's conclusion that Spoon's statements were voluntary. Indeed, "it has been held that

17

urging a suspect to help himself by telling the police the truth does not constitute a promise of leniency." *Shelby v. State*, -- N.E.2d ---, 2013 WL 1755492 (Ind. Ct. App. 2013) (citing *Turner v. State*, 682 N.E.2d 491, 494–95 (Ind. 1997)). Additionally, the totality of the circumstances do not show that Spoon's free will was overcome by any inducement, threats, violence, or other improper influences. Thus, the trial court did not abuse its discretion by admitting Interview #2 and Spoon's statements into evidence. *See, e.g.*, *Clark*, 808 N.E.2d at 1191 (holding that interrogating officer's statements to defendant that "there's a way you can work around this" and that defendant would have no future unless he was honest about what had happened did not constitute a promise or threat that rendered defendant's confession involuntary); *Malloch v. State*, 980 N.E.2d 887, 902 (Ind. Ct. App. 2012) (affirming trial court's admission of statements of defendant convicted of child molesting as voluntarily given and not product of promised leniency or overbearing police tactics), *trans. denied*.[6]

2. Sufficiency

---

[6] Even if we were to find that the admission of Spoon's statements in Interview #2 were erroneously admitted into evidence, statements obtained in violation of *Miranda* and erroneously admitted are subject to an analysis for harmless error. *See Alford v. State*, 699 N.E.2d 247, 251 (Ind. 1998). The improper admission of a confession is harmless error if it "did not contribute to [the] conviction." *Id.* (internal quotation marks and citation omitted). "To say that an error did not contribute to the verdict is . . . to find that error unimportant in relation to everything else the [trier of fact] considered on the issue in question, as revealed in the record." *Id.* (internal quotation marks and citation omitted). Here, given M.T.'s testimony that Spoon inserted his finger in her vagina, fondled her breasts, attempted to insert his penis into her buttocks, and forced her to put her hand on his penis, we conclude that any error in the admission of Interview #2 was harmless error.

18

Spoon argues that the evidence was insufficient to support his conviction for Class B felony child molesting.[7]

> When reviewing the sufficiency of the evidence to support a conviction, appellate courts must consider only the probative evidence and reasonable inferences *supporting* the verdict. It is the fact-finder's role, not that of appellate courts, to assess witness credibility and weigh the evidence to determine whether it is sufficient to support a conviction. To preserve this structure, when appellate courts are confronted with conflicting evidence, they must consider it most favorably to the [jury's verdict]. Appellate courts affirm the conviction unless no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt. It is therefore not necessary that the evidence overcome every reasonable hypothesis of innocence. The evidence is sufficient if an inference may reasonably be drawn from it to support the verdict.

*Drane v. State*, 867 N.E.2d 144, 146-47 (Ind. 2007) (internal quotation marks and citations omitted) (emphasis in original). Furthermore, "[a] molested child's uncorroborated testimony is sufficient to sustain a conviction." *Carter v. State*, 754 N.E.2d 877, 880 (Ind. 2001), *reh'g denied*, *cert. denied*. *See also Hoglund v. State*, 962 N.E.2d 1230, 1238 (Ind. 2012) ("The testimony of a sole child witness is sufficient to sustain a conviction for molestation."), *reh'g denied*.

Spoon does not dispute that the State presented evidence supporting the elements of the offense of child molesting. Instead, he contends that there is insufficient evidence to support his conviction because: (a) his notice of alibi made time of the essence, which the State failed to prove; and (b) M.T.'s testimony should be disregarded because she refreshed her recollection and because it was incredibly dubious.

---

[7] Spoon makes no challenge to his Class C felony child molesting conviction.

A.    *Alibi Notice*

Spoon first contends that there is insufficient evidence to support his conviction because the State did not prove that he committed the child molesting offense on the specific dates of August 14 or 15 contained in the charging information. Spoon acknowledges that generally time is not of the essence but contends that the filing of his notice of alibi defense made time of the essence. He further asserts that the State's failure to respond to his second alibi notice should lead this Court to "exclude all evidence not consistent with the State's amended information as to the date and time[.]" (Spoon's Br. 16-17).

"The purpose of the Indiana alibi statute is not to compel the exclusion of evidence or mandate retrials for purely technical errors." *Baxter v. State*, 522 N.E.2d 362, 369 (Ind. 1988), *reh'g denied*. Our legislature enacted the alibi statute to serve two main purposes. "First, the statute protects the defendant's ability to establish the defense by requiring the State to commit to a particular place and time that it intends to prove at trial as being the particulars of the crime." *Kroegher v. State*, 774 N.E.2d 1029, 1032 (Ind. Ct. App. 2002) (citations and quotation marks omitted), *trans. denied.* Additionally, "[r]ecognizing that some defendants will fabricate an alibi, the second purpose of the statute is to allow the State to receive notice before trial regarding the place the defendant claims to have been when the crime was committed." *Id.*

Our Indiana Supreme Court has explained that "time is not of the essence in the crime of child molesting." *Baker v. State*, 948 N.E.2d 1169, 1174 (Ind. 2011) (quoting

20

*Barger v. State*, 587 N.E.2d 1304, 1307 (Ind. 1992), *reh'g denied*), *reh'g denied*. *See also Love v. State*, 761 N.E.2d 806, 809 (Ind. 2002); *Carter v. State*, 754 N.E.2d 877, 880 n.7 (Ind. 2001), *reh'g denied*, *cert. denied*. "In child molestation cases, the exact date is only important in limited circumstances, such as where the victim's age at the time of the offense falls at or near the dividing line between classes of felonies." *Love*, 761 N.E.2d at 809. However, our Supreme Court has explained that "an alibi filing does render the time of the offense critical or 'of the essence[.]'" *Johnson v. State*, 734 N.E.2d 530, 531 (Ind. 2000) (quoting *Jennings v. State*, 514 N.E.2d 836, 837 (Ind. 1987), *reh'g denied*). *See also Hobson v. State*, 495 N.E.2d 741, 746 (Ind. Ct. App. 1986) (explaining that the rule that the State is not required to present evidence that a crime occurred on a specific date when time is not of the essence "yields to the requirement of specific proof where the alibi statutes are invoked"). Nevertheless, "an alibi notice does not impose a greater burden of proof on the State than would otherwise exist." *Johnson*, 734 N.E.2d at 531. Our Supreme Court has further explained:

> [A]lthough time becomes of the essence when the alibi statute has been invoked, it is also well settled that a variance, in order to be fatal, must be of such substantial nature as to mislead the accused in preparing and maintaining his defense or be of such a degree as is likely to place him in second jeopardy for the same offense.

*Id.* (quoting *Quillen v. State*, 271 Ind. 251, 253, 391 N.E.2d 817, 819 (1979)).

Here, the State did restrict itself to an exact date in the charging information. The State originally alleged that Spoon had molested M.T. "on or about August 16, 2011[.]" (App. 127). After Spoon filed a notice of alibi, the State amended the charging

21

information to allege that the offenses had occurred "on or about August 14 and 15, 2011[.]" (App. 102). Spoon then filed another notice of alibi. The State did not file a response, and it was not required to do so. *See Johnson*, 734 N.E.2d at 531 (citing *Joyner v. State*, 678 N.E.2d 386 (1997), *reh'g denied*) (explaining that "[t]he State is not required to respond to an alibi notice if it intends to rely on the date and place alleged in the information").

Thus, here, the State relied on the dates of "on or about August 14 and 15" as alleged in the charging information. "The State of Indiana is not required to specify the exact date or the exact time of day of an offense if the evidence available to the State does not permit such a statement of specific time or specific date." *R.L.H. v. State*, 738 N.E.2d 312, 318 (Ind. Ct. App. 2000) (citing *McNeely v. State*, 529 N.E.2d 1317, 1321 (Ind. Ct. App. 1988)). "Moreover, the alibi statute requires that the State set forth the date of the offense charged only with such reasonable specificity as the circumstances of the case allow." *McNeely*, 529 N.E.2d at 1322 (citing *Clifford v. State*, 474 N.E.2d 963, 971 (Ind. 1985); *Thurston v. State*, 472 N.E.2d 198 (Ind. 1985); *Bruce v. State*, 375 N.E.2d 1042 (Ind. 1978), *cert. denied*)).

During the bench trial, M.T. and M.H. testified that Spoon was at the house and that the offense occurred on August 14 or 15, 2011. When asked on what day of the week the offenses occurred, M.T. testified that it was a Tuesday, and M.H. testified that she thought it was a Monday night going into Tuesday but that she was "not exactly sure." (Tr. 24). It is clear from the record that there is not a complete lack of evidence

22

that the crime occurred on the dates alleged in the charging information, i.e., on or about August 14 or 15. To the extent there was evidence that the crime may have occurred on a Tuesday, which would have been August 16, this variance from the charging information was not material, especially here, where the State alleged the crime occurred "on or about" August 14 or 15 and where Spoon has failed to show any prejudice. *See, e.g.*, *Johnson*, 734 N.E.2d at 531 (finding no error or material variance where the information alleged the crime occurred "on or about" April 22 while the evidence revealed that the crime occurred in early morning of April 23); *McNeely*, 529 N.E.2d at 1322 (concluding that, where the State alleged that the defendant had molested the victim "on or about" certain dates, the trial court did not err by instructing the jury that the State was not required to prove the exact date the offenses were committed).

B. *M.T.'s Testimony*

Spoon does not dispute that M.T.'s testimony provides evidence that would support the elements of his offense. Instead, Spoon contends that M.T.'s testimony should be disregarded for the purpose of reviewing whether there was sufficient evidence to support his conviction because she refreshed her recollection and because it was incredibly dubious. We will review each contention in turn.

First, Spoon asserts that error occurred by allowing M.T. to testify regarding how Spoon molested her. Specifically, he suggests that M.T.'s testimony should be disregarded on appeal because she refreshed her memory prior to testifying. Spoon

23

acknowledges that, under Evidence Rule 612(b),[8] it is permissible for a witness to testify from a refreshed memory.[9] Nevertheless, Spoon argues that "this Court is faced with the question of whether [M.T.'s] memory was truly 'refreshed' or rather replaced." (Spoon's Br. 17). It is clear from Spoon's argument regarding M.T.'s testimony—as well has his placement of this argument in the sufficiency of the evidence section—that his challenge is nothing more than a challenge to the *weight* of M.T.'s testimony and an invitation to reweigh her credibility. This Court, however, will not engage in such a reweighing. *See Drane*, 867 N.E.2d at 146.

Spoon next argues that M.T.'s testimony should be disregarded because it was incredibly dubious. Under the incredible dubiosity rule, appellate courts may impinge upon a trier of fact's function to judge the credibility of a witness when confronted with "inherently improbable testimony or coerced, equivocal, wholly uncorroborated

---

[8] Evidence Rule 612(b) provides:

> If, before testifying, a witness uses a writing or object to refresh the witness's memory for the purpose of testifying and the court in its discretion determines that the interests of justice so require, an adverse party is entitled to have the writing or object produced, if practicable, at the trial, hearing, or deposition in which the witness is testifying.

[9] At the same time, Spoon suggests that M.T.'s testimony was inadmissible and constituted fundamental error. Spoon did not object to M.T.'s testimony; therefore, he has waived any argument regarding its admissibility. *See Hoglund v. State*, 962 N.E.2d 1230, 1239 (Ind. 2012) ("Failure to object at trial waives the issue for review unless fundamental error occurred."), *reh'g denied.* "The fundamental error exception is extremely narrow, and applies only when the error constitutes a blatant violation of basic principles, the harm or potential for harm is substantial, and the resulting error denies the defendant fundamental due process." *Mathews v. State*, 849 N.E.2d 578, 587 (Ind. 2006) (internal quotation marks omitted). "Harm is not shown by the fact that the defendant was ultimately convicted; rather harm is found when error is so prejudicial as to make a fair trial impossible." *Hoglund*, 962 N.E.2d at 1239. Here, Spoon has failed to show any error, let alone fundamental error, in the admission of M.T.'s testimony. Thus, his argument regarding fundamental error is without merit.

testimony of incredible dubiosity." *Love*, 761 N.E.2d at 810. The incredible dubiosity rule is limited to cases where a single witness presents "inherently contradictory testimony that is equivocal or coerced and there is a complete lack of circumstantial evidence of guilt." *Whedon v. State*, 765 N.E.2d 1276, 1278 (Ind. 2002). "Application of this rule is rare and the standard to be applied is whether the testimony is so incredibly dubious or inherently improbable that no reasonable person could believe it." *Love*, 761 N.E.2d at 810.

In support of his argument that M.T.'s testimony was incredibly dubious, Spoon lists inconsistencies between M.T.'s and M.H.'s testimony regarding the bed where J.H. was sleeping. Such inconsistencies, however, do not make the testimony incredibly dubious. The standard for incredible dubiosity is inherent contradiction, not contradiction between witnesses' testimony. *Stephenson v. State*, 742 N.E.2d 463, 497 (Ind. 2001), *cert. denied*. As such, any inconsistencies in the testimony of multiple witnesses goes to the weight and credibility of the witnesses' testimony and do not render the testimony incredible. *Id.* "It is for the trier of fact to resolve conflicts in the evidence and to decide which witnesses to believe or disbelieve." *Ferrell v. State*, 746 N.E.2d 48, 51 (Ind. 2001). "If the testimony believed by the trier of fact is enough to support the verdict, then the reviewing court will not disturb it." *Id.*

At trial, M.T. unequivocally testified that Spoon had inserted his finger in her vagina, fondled her breasts, attempted to insert his penis into her buttocks, and forced her to put her hand on his penis. M.T. testified that she and J.H. were lying in M.T.'s bed

25

when Spoon touched her and that Spoon went to the other bed after he fell off her bed. J.H. corroborated M.T.'s testimony that she slept with M.T. in her bed that night. M.H. also testified that she awoke the following morning to find Spoon in the girls' bedroom, which was unusual, and that Spoon admitted that he had tried to climb in bed with M.T. Finally, Spoon admitted during his police interview that he got into bed with M.T. and remembered touching her.

Here, the incredible dubiosity rule is not applicable because M.T.'s trial testimony was unequivocal and was corroborated by other evidence. Spoon's argument is nothing more than an invitation for this Court to judge the credibility of the witness, which we decline to do. The trial judge, as trier of fact, believed M.T.'s testimony, which was sufficient to support a guilty verdict for Class B felony child molesting, and we decline to impinge on the trial judge's credibility determinations. Because Spoon has failed to show that M.T.'s testimony was not so inherently improbable that no reasonable trier of fact could believe it and because there is probative evidence from which the trial judge, as finder of fact, could have found Spoon guilty beyond a reasonable doubt of Class B felony child molesting, we affirm Spoon's conviction.[10] *See, e.g.*, *Hampton v. State*, 921 N.E.2d 27, 29 (Ind. Ct. App. 2010) (holding that the testimony of the seven-year-old victim was not incredibly dubious and affirming the defendant's child molesting conviction), *reh'g denied*, *trans. denied*.

---

[10] We decline Spoon's invitation to adopt Judge Baker's dissenting opinion in *Leyva v. State*, 971 N.E.2d 699 (Ind. Ct. App. 2012), *trans. denied*.

3. Appropriateness of Sentence

Lastly, Spoon argues that his advisory sentence of ten (10) years for his Class B felony child molesting conviction was inappropriate.

We may revise a sentence if it is inappropriate in light of the nature of the offense and the character of the offender. Ind. Appellate Rule 7(B). The defendant has the burden of persuading us that his sentence is inappropriate. *Childress v. State*, 848 N.E.2d 1073, 1080 (Ind. 2006). The principal role of a Rule 7(B) review "should be to attempt to leaven the outliers, and identify some guiding principles for trial courts and those charged with improvement of the sentencing statutes, but not to achieve a perceived 'correct' result in each case." *Cardwell v. State*, 895 N.E.2d 1219, 1225 (Ind. 2008). Whether a sentence is inappropriate ultimately turns on "the culpability of the defendant, the severity of the crime, the damage done to others, and a myriad of other factors that come to light in a given case." *Id.* at 1224. Our sentence review under Appellate Rule 7(B) "is not to determine whether another sentence is more appropriate but rather whether the sentence imposed is inappropriate." *Conley v. State*, 972 N.E.2d 864, 876 (Ind. 2012) (internal quotation marks and citation omitted), *reh'g denied.* "It is not a matter of second guessing the trial court sentence." *Id.*

In determining whether a sentence is inappropriate, we acknowledge that the advisory sentence "is the starting point the Legislature has selected as an appropriate sentence for the crime committed." *Childress*, 848 N.E.2d at 1081. Spoon was convicted of Class B felony child molesting. The sentencing range for a Class B felony

27

is between six (6) and twenty (20) years, with the advisory sentence being ten (10) years. I.C. § 35-50-2-5. Here, the trial court sentenced Spoon to the advisory term for his conviction. The trial court stated, however, that it would consider a modification of his sentence to the minimum term of six (6) years if he complied with drug, alcohol, and sex offender counseling while incarcerated.

Regarding the nature of Spoon's child molesting offense, Spoon admits that it was "severe," but he attempts to minimize it by suggesting that "it could have been much worse than it was." (Spoon's Br. 22). The record reveals that nineteen-year-old Spoon drank alcohol and went into the bedroom of his girlfriend's twelve-year-old daughter, where he then started to rub M.T.'s arm as she slept. Spoon then crawled into bed with M.T. and began rubbing her leg. Thereafter, Spoon pulled down M.T.'s underwear and inserted his finger into her vagina. Spoon then fondled M.T.'s breasts and "tried to put his penis in [M.T.'s] butt[,]" but he was unable to do so. (Tr. 53). Spoon then grabbed M.T.'s hand, put it on his penis, and said "come on, babe." (Tr. 55). Spoon then stopped because he fell off the bed.

As to Spoon's character, the trial court recognized that he had a "youthful age" of nineteen and had a child of his own, and the trial court found those to be mitigating circumstances. (Tr. 140). The record reveals that Spoon had a criminal history, which includes illegal consumption of alcohol as both a juvenile and an adult. As part of a February 2010 juvenile adjudication, Spoon was placed on probation and ordered to complete his GED and complete a substance abuse evaluation. However, the following

28

year, Spoon pled guilty to illegal consumption in May 2011, which was three months before his current offense that also involved the illegal consumption of alcohol. Indeed, the trial court noted that "alcohol contributed to this [offense] significantly[,]" but it did not find it to be a mitigator. (Tr. 140). The record reveals that Spoon first started to drink alcohol at the age of ten and that he drank alcohol every weekend from age thirteen to when he was placed on probation, which was at age eighteen. In addition to Spoon's abuse of alcohol, he also admitted to first using marijuana at the age of ten and smoking it every other day from age thirteen to fifteen. Spoon also admitted to the illegal use of prescription drugs, such as Xanax and Valium. Spoon's character is also revealed by his testimony in which he claimed that he lied to police. Spoon's history of criminal activity and admitted illegal drug use reflect poorly on his character and indicate a disregard for the law.

Spoon asserts that his sentence was "excessive" and contends that it should be revised to ten (10) years with six (6) years executed and four (4) years suspended to probation. (Spoon's Br. 21). We note, however, that the trial court sentenced Spoon to the advisory term for his conviction but indicated that it would consider a modification of his sentence to the minimum term of six (6) years if Spoon complied with drug, alcohol, and sex offender counseling while incarcerated. Thus, upon asserting some responsibility, Spoon can have the sentence that he seeks.

Spoon has not persuaded us that that his sentence is inappropriate. Therefore, we affirm the trial court's sentence.

29

Affirmed.

ROBB, C.J., and FRIEDLANDER, J., concur.