# FOR PUBLICATION



ATTORNEYS FOR APPELLANT:

**KATHARINE C. LIELL**
Liell & McNeil
Bloomington, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**KARL M. SCHARNBERG**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| ROBERT E. EASTWOOD, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 07A04-1202-CR-64 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE BROWN CIRCUIT COURT
The Honorable Judith A. Stewart, Judge
Cause No. 07C01-0401-FA-24

**December 4, 2012**

**OPINION – FOR PUBLICATION**

**BAKER, Judge**

Robert E. Eastwood was charged with one count of Child Molesting,[1] a class A felony, one count of Child Molesting,[2] a class C felony, and one count of Fondling in the Presence of a Minor,[3] a class D felony. During Eastwood's jury trial, certain hearsay evidence was admitted through the testimony of various witnesses, and Eastwood did not object. The trial court also admitted two audio-taped statements of the victim into evidence, and Eastwood did not object to the admission of these statements. Eastwood was ultimately found guilty as charged.

It is apparent that Eastwood's defense counsel's decision not to object to the testimony and taped statements was indicative of a strategy to challenge the victim's credibility and to point out the inconsistencies in her testimony. Eastwood has waived these issues and has not established that the admission of this evidence amounted to fundamental error. As a result, we affirm the judgment of the trial court.

## FACTS

H.S. was born on May 20, 1997, and between the summer of 2002 and the fall of 2003, she and her brother attended a daycare at the Brown County home of Eastwood and his wife. Eastwood was otherwise unemployed and spent most of his time around the house.

---

[1] Ind. Code § 35-42-4-3(a)(1).

[2] I.C. § 35-42-4-3(b).

[3] I.C. § 35-42-4-5(c)(3).

During afternoon naptime, H.S. would sleep in one of the bedrooms with several of the older children. On one occasion during naptime, Eastwood walked into the room and placed his penis on H.S.'s anus. Another time, Eastwood told H.S. to put her mouth on his penis, but she refused. On other occasions, Eastwood would put his hands down H.S.'s pants, remove her clothes, put his mouth on H.S.'s vagina, or place his fingers inside her vagina.

Over the weekend of November 14-16, 2003, after H.S. and her brother had stopped attending the Eastwoods' daycare, H.S. visited her great aunt, Debbie Hilligoss. At some point, Hilligoss saw H.S. attempting to put a tube of lip gloss into her vagina and rub herself with a rubber ball. When Hilligoss asked H.S. why she was doing these things, H.S. responded that she did not know. However, H.S. told Hilligoss that Eastwood had "touched her there." Tr. p. 332. H.S. also stated to Hilligoss that Eastwood had "rubbed [her] privates in the front and on the back." Id. at 333. H.S. added that Eastwood "had laid on top of her with no clothes and on her backside with no clothes." Id.

Hilligoss called Amanda, H.S.'s stepmother, and told her what H.S. had reported to her. Amanda drove to Hilligoss's residence where they called Dana Stone, H.S.'s mother, and arranged to meet her at the McDonald's restaurant in Nashville. Hilligoss informed Stone of what H.S. had said, and they proceeded to the Brown County Sheriff's Office. When they arrived, Detective Steve Brahaum interviewed H.S.

3

During the interview, H.S. told Detective Brahaum that Eastwood had placed his fingers on her "front and back." Tr. p. 466. H.S. explained that her front is the part she uses to go to the bathroom. H.S. also clarified that her back was her "butt." Id. at 467. H.S. told Detective Brahaum that Eastwood did these things to her in the bedroom while the other children were sleeping. H.S. further explained that Eastwood touched her on her bottom and on her front under the clothes and that Eastwood made her touch his "doing ding—the part that boys use to go to the bathroom." Id. at 471. She also stated that Eastwood would be on top of her, and that Eastwood would "put his front on her front" and it felt "bad." Id. at 473. H.S. then explained to Detective Brahaum that Eastwood would sometimes lie on the bed and masturbate in front of her and that Eastwood told H.S. never to tell anyone about the incidents. At the conclusion of the interview, Detective Brahaum told H.S. to let Stone know if she remembered anything else.

The next day, Detective Brahaum and a representative from the Department of Child Services (DCS) went to the Eastwoods' residence. Although Eastwood denied any wrongdoing, the DCS shut down the daycare that day.

On November 18, 2003, H.S. returned to the Sheriff's Office for a second interview. During that conversation, H.S. told Detective Brahaum that Eastwood would sometimes lie on the bed and ejaculate while she was next to him.

On January 16, 2004, Detective Brahaum prepared an affidavit for probable cause and obtained an arrest warrant for Eastwood. When Detective Brahaum went to the

4

residence, he discovered that Eastwood had fled. Eastwood was ultimately tracked to Robinson, Illinois, in 2011, and Detective Brahaum requested assistance from the United States Marshals Service (Marshals Service) in executing the arrest warrant.

On September 14, 2011, Deputy Pete Kell of the Marshals Service went to Eastwood's address in Robinson. The police officers eventually located Eastwood hiding behind a shelving unit at the residence. Eastwood told Deputy Kell that he had "dragged the whole process out" because he was hoping that the police would give up and go away. Tr. p. 549.

Eastwood was taken into custody, and at a jury trial that commenced on December 14, 2011, Eastwood testified that he had moved from Brown County to his daughter's mobile home in Parker's Lake, Kentucky, at about the same time that the arrest warrant was issued. He and his wife eventually moved to Robinson. When Eastwood was apprehended, he told Deputy Kell that he was "old and tired of running." Id. at 635.

H.S. testified as a witness against Eastwood and was cross-examined about some inconsistencies in her deposition statements, trial testimony, and the initial statements that she gave to Detective Brahaum. The trial court admitted her recorded interviews with Detective Brahaum into evidence with no objection. H.S. also testified several times in detail regarding the allegations with no objection.

Hilligoss testified about H.S.'s initial statements that H.S. made to her about the incidents. Eastwood also did not object to that testimony. Stone also testified about what

Hilligoss had told her. Eastwood objected on the grounds of hearsay, and the trial court instructed the jury that

> [S]he's about to tell you something that someone else, Ms. Hilligoss, told her, you are not to consider that evidence for the truth of what Ms. Hilligoss said, only as to why this witness took the next step she did. You may answer.

Tr. p. 413-14. Stone went on to testify that "Debbie asked the kids to stay in the car. Said she needed to talk to me. We went behind the van. She and Amanda and my ex-husband Jeremy." Id. Eastwood's counsel made a continuing objection, and the trial court again instructed that "it's only being offered to show why she took the next step she did. Not for the truth of what Ms. Hilligoss said." Thereafter, Stone testified:

> She told me that [H.S.] had been molested and . . . I mean, from there, um . . . I didn't know who. I mean . . . so . . . I asked and she said that [H.S.] told her it was [Eastwood]. So I asked if they would go with me immediately to the Sheriff's Department because I didn't know what else to do. And that's what we did.

Id.

At the conclusion of the trial, Eastwood was found guilty as charged. Thereafter, he was sentenced to an aggregate term of thirty years of incarceration. Eastwood now appeals.

DISCUSSION AND DECISION

I. Admission of Audiotaped Statements

Eastwood argues that fundamental error occurred when the trial court admitted into evidence the two audio-taped statements of H.S. that she had provided to Detective

6

Brahaum. Although Eastwood did not object, he claims that such evidence was inadmissible as a matter of law and inflamed the passion of the jury.

We initially observe that the decision to admit or exclude evidence is within a trial court's sound discretion and is afforded great deference on appeal. Carpenter v. State, 786 N.E.2d 696, 702 (Ind. 2003). An abuse of discretion occurs when the trial court's decision is clearly erroneous and against the logic and effect of the facts and circumstances before it or it misinterprets the law. Id. at 703. When reviewing the admissibility of evidence, we consider only the evidence in favor of the trial court's ruling and any unrefuted evidence in the defendant's favor. Redding v. State, 844 N.E.2d 1067, 1069 (Ind. Ct. App. 2006).

Eastwood acknowledges that he did not object and has waived the allegation of error. Johnson v. State, 734 N.E.2d 530, 532 (Ind. 2000). However, as noted above, Eastwood attempts to preserve the issue, claiming that the trial court committed fundamental error in admitting the recordings into evidence.

The fundamental error exception is very narrow, and it arises only when there are "clearly blatant violations of basic and elementary principles, and the harm of potential for harm could not be denied." Warriner v. State, 435 N.E.2d 562, 563 (Ind. 1982). Fundamental error occurs only when the error is so prejudicial that a fair trial is rendered impossible. Benefield v. State, 945 N.E.2d 791, 801 (Ind. Ct. App. 2011).

Although Eastwood argues that fundamental error occurred because he was denied his right to confront H.S., she was, in fact, called as a witness and underwent cross-

7

examination. Tr. p. 381, 390. In fact, H.S. was specifically cross-examined about inconsistencies between her deposition statement with defense counsel and at trial with her initial statements to Detective Brahaum. Id. at 394-96. As a result, we reject Eastwood's contention that fundamental error occurred in this instance.

We similarly reject Eastwood's claim that fundamental error resulted and prejudiced Eastwood to the extent that he was denied a fair trial by the "drumbeat repetition" of H.S.'s testimony and the allegations against him. Appellant's Br. p. 8-10. Indeed, Eastwood may very well have been able to prevent such repetition by objecting. However, Eastwood's failure to object appears to have been a purposeful strategy that Eastwood's defense counsel employed in an effort to challenge H.S.'s credibility.

Indeed, this appears to be the case because Eastwood did object to other alleged hearsay evidence that was offered at trial. Tr. p. 413. The strategy ultimately failed, and Eastwood's counsel is now attempting to find fault with the admission of the very same evidence that was admitted into evidence without objection. This, Eastwood is not permitted to do, and he has failed to establish fundamental error with regard to this issue.

Eastwood then contends that he was unduly prejudiced by Hilligoss's trial testimony regarding the initial disclosure that H.S. made. However, once again, Eastwood could have objected but failed to do so. The State observes, and we agree, that had Eastwood objected, the trial court would have at the very least, have given a limiting instruction regarding the use to which the jury could consider Hilligoss's testimony. For instance, the trial court could have explained that the statement was introduced to show

8

the next step that Hilligoss took with regard to the allegations. However, because Eastwood's counsel appears to have chosen not to object as part of a deliberate strategy, Eastwood's claim of fundamental error fails. See Stavropoulos v. State, 678 N.E.2d 397, 398 (Ind. 1997) (observing that defense counsel's failure to object to hearsay evidence in a child sexual assault case that consisted of mother's testimony as to what the child had told her regarding the alleged assault and a police officer's testimony as to the mother's report of the child's statements, was not particularly prejudicial, did not amount to ineffective assistance of counsel, and did not rise to the level of fundamental error requiring reversal).

In short, we will not permit the doctrine of fundamental error to provide a cover for a failed strategy that Eastwood deliberately pursued. Thus, his claims of fundamental error fail.

## II. Admission of Evidence Regarding H.S.'s Disclosure to Hilligoss

Eastwood next claims that the trial court erred in admitting testimony regarding Hilligoss's relation of the events to Stone about what H.S. had initially reported to Hilligoss. Eastwood argues that the trial court erred in admitting this evidence under the theory that the statements were used to explain the course of the investigation because the issue of why Stone took H.S. to the police "was irrelevant and of no probative value." Appellant's Br. p. 13.

As noted above, Stone testified about her reason for taking H.S. to the Sheriff's Office. Tr. p. 412-14. The testimony that followed concerned the statement that H.S.

9

gave to Detective Brahaum that formed the basis for Eastwood's arrest. Stone's testimony also explained why a second interview with H.S. was conducted.

However, Eastwood asserts that the evidence was not relevant because "the theory of defense was that something may have happened to H.S., but Eastwood was not the perpetrator." Appellant's Br. p. 12. Notwithstanding this contention, the interview with Detective Brahaum was the means by which he came to suspect that Eastwood was the offender, which then prompted him to go to Eastwood's residence and speak with him. Tr. p. 452, 481. It is apparent that the prosecutor presented this evidence showing why the investigation focused on Eastwood and not someone else. Moreover, the evidence was relevant to show the various investigative steps that Detective Brauham took and why he took them. In short, Stone's testimony provided the jury with an explanation as to why that interaction occurred at all.

When the trial court admitted this testimony, it twice cautioned the juror that they were not to regard the testimony for the truth of the matter asserted, but only to show why Stone took H.S. to the Sheriff's Department. Tr. p. 413-14. For these reasons, Eastwood has failed to show that he was unduly prejudiced by the admission of this evidence, and he has not established fundamental error.

The judgment of the trial court is affirmed.

ROBB, C.J., and BRADFORD, J., concur.

10