**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Oct 25 2013, 5:52 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**SUZY ST. JOHN**
Marion County Public Defender
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**LARRY D. ALLEN**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

|  |  |  |
|---|---|---|
| TYREZ BOYD, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 49A02-1303-CR-287 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Kimberly Brown, Judge
Cause No. 49F07-1203-CM-16475

**October 25, 2013**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**FRIEDLANDER, Judge**

Tyrez Boyd appeals his conviction of Battery,[1] a class A misdemeanor, presenting the following restated issue for review: Did the trial court err in excluding evidence ostensibly pertaining to Boyd's claim of self-defense?

We affirm.

The facts favorable to the conviction are that B.K. (the victim) and Y.B. had been quarreling about the victim's girlfriend. They had telephoned each other and exchanged threats on the matter. At about 5 or 6 p.m. on March 7, 2013, the victim went to New Augusta to confront Y.B. He found Y.B. playing basketball. Y.B. signaled his intention to fight by taking off his shirt. The victim attempted to hit Y.B. and missed, and Y.B. ran away. At that point, the victim decided to walk home. While the victim was walking home, Y.B. called his older brother, E.D., and told him about the incident. Boyd was with E.D. at the time. They decided to seek out the victim before they went to a football workout.

A short time later, E.D. and Boyd were driving when they saw the victim walking through a neighborhood. E.D. decided that he wanted to "settle it" with the victim. *Transcript* at 48. The victim saw Boyd and E.D. jump out of the car and run toward him. He noted that neither Boyd nor E.D. was wearing a shirt, which he interpreted as signaling their intention to fight. As they approached, the victim asked if they were there to "jump" him. *Id.* at 13. He attempted unsuccessfully to get away. The victim then attempted to hit E.D., but missed. E.D. tore off the victim's shirt as the victim tried to get away. Eventually, E.D. and Boyd cornered the victim in a yard, where E.D. struck the victim, knocking him to

[1]   Ind. Code Ann. § 35-42-2-1 (West, Westlaw current with all 2013 legislation).

the ground. After the victim was on the ground, Boyd kicked his arm, claiming he saw the victim "fiddling with his pocket." *Id.* at 60. The victim got up off the ground and hit Boyd "because he looked like he was about to hit me[.]" *Id.* The victim then sought to escape by running out of the yard through a gate. He asked his cousin, who was with him, to call his parents. Boyd and E.D. gave chase and eventually caught the victim. E.D. again knocked the victim to the ground. E.D. and Boyd then commenced kicking the victim in the head, back, and stomach. Boyd and E.D. then left to go to their football workout.

Approximately five minutes after E.D. and Boyd left, the victim's parents arrived, as did police and emergency medical personnel. As a result of the incident, the victim suffered bruises on his back, chest, and eye. A blood clot formed in his eye. His face was swollen the next day around his eye, ear, and jaw. As a result of the blood clot in his eye, the victim was admitted to the hospital for a few days approximately two weeks after the incident.

The State charged Boyd with battery as a class a misdemeanor. Following a bench trial, Boyd was found guilty as charged and sentenced to 1 year incarceration, with 363 days suspended and 1 day credit time for time served, with good-time credit. Boyd was also ordered to serve 32 hours of community service, with an additional 24 hours of community service in lieu of court costs and fines.

At trial, Boyd offered a defense of self-defense. Essentially, he claimed that he thought the victim had a weapon in his pocket at the time of the incident. He claimed he kicked the victim's arm in order to prevent him from retrieving the weapon. In support of this claim, Boyd sought to elicit testimony from the victim about prior phone calls between

the victim and Boyd in which the victim purportedly threatened to use weapons against Boyd and E.D. The trial court sustained the State's objection to that evidence and excluded it. Boyd contends the trial court committed reversible error in doing so.

Boyd challenges the exclusion of evidence. The decision to admit or exclude evidence lies within the trial court's sound discretion and is generally afforded great deference upon appeal. *Carpenter v. State*, 786 N.E.2d 696 (Ind. 2003). "An abuse of discretion occurs when the trial court's decision is clearly against the logic and effect of the facts and circumstances before it." *An-Hung Yao v. State*, 975 N.E.2d 1273, 1276 (Ind. 2012) (quoting *Hoglund v. State*, 962 N.E.2d 1230, 1237 (Ind. 2012)). "A trial court also abuses its discretion when it misinterprets the law." *Id*. We will not reverse a trial court's ruling on the admissibility of evidence absent a showing of manifest abuse of discretion resulting in the denial of a fair trial. *Carpenter v. State*, 786 N.E.2d 696. In making this determination, the court on review will consider the evidence in favor of the trial court's ruling and unrefuted evidence in a defendant's favor. *Eastwood v. State*, 984 N.E.2d 637 (Ind. Ct. App. 2012), *trans. denied*. A trial court's evidentiary ruling will be upheld upon the basis of any legal theory supported by the record. *Rush v. State*, 881 N.E.2d 46 (Ind. Ct. App. 2008).

Self-defense is a valid justification for committing what would otherwise be a criminal act. *See Miller v. State*, 720 N.E.2d 696 (Ind. 1999). To refute a claim of self-defense, the State bears the burden of disproving at least one of the elements beyond a reasonable doubt. *Id*. Generally, a self-defense claim is not available to an initial aggressor. *See* Ind. Code

4

Ann. § 35-41-3-2(g)(3) (West, Westlaw current with all 2013 legislation) ("a person is not justified in using force if: … the person … is the initial aggressor"). The exception to this rule is where the defendant, although the initial aggressor, withdraws from the encounter and communicates to the other person the intent to withdraw, and in response the other person nevertheless continues or threatens to continue unlawful action. *See id.* No one has suggested this exception applies in the present case.

The evidence in question included three instances in which Boyd sought to establish that, during previous telephone calls, the victim had threatened to use a gun. The first came during the victim's cross-examination, as follows:

**DEFENSE:** Now, you … two (2) were arguing and threatening each other before?

**[THE VICTIM]:** Yeah.

**[DEFENSE]:** You were calling him?

**[THE VICTIM]:** Yea [sic] he called me.

**[DEFENSE]:** He called you?

**[THE VICTIM]:** Yeah.

**[DEFENSE]:** You didn't call him?

**[THE VICTIM]:** I, we both called each other.
**[DEFENSE]:** And you were threatening him?

**[THE VICTIM]:** They threatened me. They said they was gone [sic] come and jump me.

**[DEFENSE]:** Okay, but you were threatening them as well?

**[THE VICTIM]:** Yeah, cause they said they was gone [sic] come and get me.

5

**[DEFENSE]:** Okay, um, you threatened them with violence?

**[THE VICTIM]:** Yep.

**[PROSECUTOR]:** Objection, Your Honor, insignificant *inaudible* of *inaudible* testimony.

**THE COURT:** Sustained.

**[DEFENSE]:** I just asked him, what he, what he, what it was.

**THE COURT:** I sustained it.

*Transcript* at 21. The second instance occurred during the testimony of E.D., as follows:

**[DEFENSE]:** Okay. So, then what happened after that?

**[E.D.]:** Uh, he kept on swinging and we both got to swinging at each other. The first punch was missed.

**[DEFENSE]:** Okay.

**[E.D.:** But, after the first punch, he kept on swinging and we both started swinging at each other, and we both ended up just…

**[DEFENSE]:** Did you know if he had any weapons on him at any point?

**[PROSECUTOR]:** Objection, cause [sic] for speculation.

**THE COURT:** Response.

**[DEFENSE]:** Judge, I'm not asking for the truth in the matter, I'm just trying to, perceive the effect of *inaudible*and how this fight engaged.

**THE COURT:** Wait, wait, on that basis, your objection, the objection is sustained.

*Id.* at 46. The third instance occurred during Boyd's direct examination, as follows:

**Q**     [P]rior phone calls with the victim] were threatening?

6

**A** Yes, ma'am.

**Q** Okay. What was, [sic] there a mention of any weapons in those phone calls?

> **[PROSECUTOR]:** Objection, here say [sic].

> **THE COURT:** Response.

> **[DEFENSE]:** Um, I'm not asking for what he said, I'm asking for if there was a mention of the weapon.

> **[PROSECUTOR]:** She's asking for summary.

> **[DEFENSE]:** But…

> **THE COURT:** You're asking about phone calls, reportedly made by the defendant to the witness?

> **[DEFENSE]:** No, uh, the alleged victim to the defendant.

> **THE COURT:** I'll sustain the objection.

*Id.* at 58-59.

Boyd claims the foregoing excluded testimony was admissible because, "if credited, [it] would have proved the force he used against the victim was necessary to protect himself and E.D. from what he reasonably believed to be the imminent use of unlawful force." *Appellant's Reply Brief* at 4. In other words, if the Court had permitted Boyd to present evidence that the victim had threatened in previous phone calls to use a weapon against him and E.D., the court would, or at least could, have concluded that Boyd's use of force was a legitimate exercise of self-defense. The State argues upon appeal that Boyd waived these claims because he did not submit offers of proof with respect to the excluded testimony. Boyd counters in his reply brief that offers to prove were not necessary because, "the court

7

was fairly on notice of what evidence Boyd sought to offer, and he was clearly advancing a theory of self-defense[.]" *Id.* Even were they not waived, Boyd's arguments are without merit.

As indicated previously, a claim of self-defense is unavailable if the defendant was an initial aggressor in the incident that culminated in the battery charge. The victim's description of the incident differed markedly from the descriptions provided by E.D. and Boyd. Common to both accounts was that, prior to the physical altercation, there had been phone calls between the victim and E.D. and Boyd, and that the victim had threatened E.D. and Boyd in those phone calls. Also, all parties agreed that E.D. and Boyd drove up to the victim while the victim was walking, E.D. and Boyd got out of the car and approached the victim, and the victim took the first swing, which missed its mark. The rest of the details provided by the victim are consistent with those set out in the recitation of facts at the beginning of this opinion.

Boyd's and E.D.'s versions identify the victim as the aggressor during the entire incident. Moreover, according to their testimony, Boyd acted primarily as a peace-maker during the incident and sought to prevent the other two from fighting and to break up the fight after it had commenced. The only touching to which Boyd admitted was the kicking of the victim's arm, a single time, while the victim was on the ground during the initial encounter. To reiterate, Boyd sought to establish by the excluded evidence that this belief was premised upon threats the victim made during the phone calls that he was going to use a weapon against E.D. and Boyd.

8

In announcing its finding of guilt, the trial court did not elaborate upon its reasoning, nor did it indicate which particular assertions of fact it found more credible concerning those areas where the two versions diverged. It is clear, however, that the court found the victim's version more credible than Boyd's. Thus, the court clearly rejected Boyd's claims that (1) he did not show up to fight, and (2) his activities were limited to primarily breaking up the fight between the victim and E.D., (3) he made physical contact with the victim only once – when he kicked the victim's hand away from the victim's pocket in order to prevent him from retrieving a gun that Boyd believed he then possessed. Thus, quite apart from the existence or reasonableness of Boyd's belief that the victim had a gun, the evidence consistent with guilt demonstrated that Boyd and E.D. sought a confrontation with the victim, and drove to the victim's location to initiate it. Moreover, the evidence consistent with not only the victim's version of the incident, but also with the evidence concerning the victim's injuries, revealed that the victim escaped the initial confrontation, but was chased down by Boyd and E.D. After they caught him, they administered the beating that resulted in injuries that were serious enough to require hospitalization. Under this set of facts, Boyd was active in instigating the incident and therefore cannot establish the elements of a claim of self-defense.

Finally, even assuming Boyd is correct that the trial court should have permitted him to present the excluded evidence of the victim's purported threat to use a weapon, the rulings of which Boyd complains did not shield the trial court from information which would support that claim. Upon direct examination, E.D. testified as follows:

**Q:**     Okay. So, [Boyd] kicked [the victim's] arm away?

9

**A:** Yes.

**Q:** And then he tried to split you two apart?

**A:** He kicked his arm away in the beginning of the fight. And at the end of the fight, he tried to separate us, all right, now Bro, let's go, let's go, we have to get our work out.

**Q:** Okay. And, and you believed that he kicked his arm away because he was trying to, he was helping you?

**A:** He thought [the victim] had a weapon. Because, previously during the phone calls, he kept on saying that when we see you, we're going to shoot you, we're going to shoot you.

*Transcript* at 49. The State did not object to this evidence. Therefore, there was evidence of record that the victim threatened to use firearms against Boyd and E.D. during a phone call on a previous occasion. Moreover, we are inclined to agree with Boyd's assertion, set out previously in this opinion, that the trial court was well aware of the fact that Boyd's claim of self-defense was grounded in part upon his claim that the victim had made such a threat on a previous occasion. In any event, it is clear, that the trial court was not persuaded by this claim, concluding as it did that the State had successfully rebutted Boyd's claim of self-defense. Thus, the trial court did not abuse its discretion in excluding the evidence.

Judgment affirmed.

BAKER, J., and VAIDIK, J., concur.

10