## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED
Aug 11 2015, 5:37 am
CLERK
of the supreme court,
court of appeals and
tax court

APPELLANT PRO SE

Robert E. Eastwood
Miami County Correctional Facility
Bunker Hill, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Karl M. Scharnberg
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Robert E. Eastwood, <br> *Appellant-Petitioner,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Respondent* | August 11, 2015 <br><br> Court of Appeals Case No. 07A05-1408-PC-358 <br><br> Appeal from the Brown Circuit Court <br><br> The Honorable Judith A. Stewart, Judge <br><br> Case No. 07C01-1304-PC-135 |

**Crone, Judge.**

## Case Summary

[1]     Following a jury trial, Robert E. Eastwood was convicted of one count of class A felony child molesting, one count of class C felony child molesting, and one

count of class D felony fondling in the presence of a minor. This Court affirmed his convictions on direct appeal. Eastwood filed a petition for postconviction relief claiming that he was denied the effective assistance of trial counsel. The postconviction court denied relief, and Eastwood filed this pro se appeal. Concluding that the postconviction court properly determined that Eastwood failed to demonstrate that his counsel's performance was deficient or prejudicial, and further concluding that additional issues raised by Eastwood on appeal are waived, we affirm.

## Facts and Procedural History

[2] On direct appeal, another panel of this Court recited the relevant facts underlying Eastwood's convictions, in part, as follows:

> H.S. was born on May 20, 1997, and between the summer of 2002 and the fall of 2003, she and her brother attended a daycare at the Brown County home of Eastwood and his wife. Eastwood was otherwise unemployed and spent most of his time around the house.
>
> During afternoon naptime, H.S. would sleep in one of the bedrooms with several of the older children. On one occasion during naptime, Eastwood walked in to the room and placed his penis on H.S.'s anus. Another time, Eastwood told H.S. to put her mouth on his penis, but she refused. On other occasions, Eastwood would put his hands down H.S.'s pants, remove her clothes, put his mouth on H.S.'s vagina, or place his fingers inside her vagina.
>
> Over the weekend of November 14 –16, 2003, after H.S. and her brother had stopped attending Eastwoods' daycare, H.S. visited her great aunt, Debbie Hilligoss. At some point, Hilligoss saw H.S. attempting to put a tube of lip gloss into her vagina and rub herself with a rubber ball. When Hilligoss asked H.S. why she was doing these things, H.S. responded that she did not know. However, H.S. told Hilligoss that Eastwood had "touched her there." H.S. also stated to Hilligoss that Eastwood had "rubbed [her]privates in the front and

on the back." H.S. added that Eastwood "had laid on top of her with no clothes and on her backside with no clothes."

Hilligoss called Amanda, H.S.'s stepmother, and told her what H.S. had reported to her. Amanda drove to Hilligoss's residence where they called Dana Stone, H.S.'s mother, and arranged to meet her at the McDonald's restaurant in Nashville. Hilligoss informed Stone of what H.S. had said, and they proceeded to the Brown County Sheriff's Office. When they arrived, Detective Steve Brahaum interviewed H.S.

During the interview, H.S. told Detective Brahaum that Eastwood had placed his fingers on her "front and back." H.S. explained that her front is the part she uses to go to the bathroom. H.S. also clarified that her back was her "butt." H.S. told Detective Brahaum that Eastwood did these things to her in the bedroom while the other children were sleeping. H.S. further explained that Eastwood touched her on her bottom and on her front under the clothes and that Eastwood made her touch his "doing ding—the part that boys use to go to the bathroom." She also stated that Eastwood would be on top of her, and that Eastwood would "put his front on her front" and it felt "bad." H.S. then explained to Detective Brahaum that Eastwood would sometimes lie on the bed and masturbate in front of her and that Eastwood told H.S. never to tell anyone about the incidents. At the conclusion of the interview, Detective Brahaum told H.S. to let Stone know if she remembered anything else.

The next day, Detective Brahaum and a representative from the Department of Child Services (DCS) went to the Eastwoods' residence. Although Eastwood denied any wrongdoing, the DCS shut down the daycare that day.

On November 18, 2003, H.S. returned to the Sheriff's Office for a second interview. During that conversation, H.S. told Detective Brahaum that Eastwood would sometimes lie on the bed and ejaculate when she was next to him.

On January 16, 2004, Detective Brahaum prepared an affidavit for probable cause and obtained an arrest warrant for Eastwood. When Detective Brahaum went to the residence, he discovered that Eastwood had fled. Eastwood was ultimately tracked to Robinson, Illinois, in 2011, and Detective Brahaum requested assistance from the United States Marshals Service (Marshals Service) in executing the arrest warrant.

> On September 14, 2011, Deputy Pete Kell of the Marshals Service went to Eastwood's address in Robinson. The police officers eventually located Eastwood hiding behind a shelving unit at the residence. Eastwood told Deputy Kell that he had "dragged the whole process out" because he was hoping that the police would give up and go away.

*Eastwood v. State*, 984 N.E.2d 637, 638-39 (Ind. Ct. App. 2012) (citations omitted), *trans. denied* (2013).

[3] Eastwood was arrested and brought back to Indiana to face charges of one count of class A felony child molesting, one count of class C felony child molesting, and one count of class D felony fondling in the presence of a minor. Following a three-day jury trial, Eastwood was found guilty as charged. The trial court imposed an aggregate thirty-year sentence.

[4] Eastwood appealed, and this Court affirmed his convictions. *See id*. Thereafter, Eastwood filed a pro se petition for postconviction relief. Private counsel subsequently entered an appearance on Eastwood's behalf, and an evidentiary hearing was held. On July 10, 2014, the postconviction court entered its findings of fact and conclusions thereon denying Eastwood's petition. This pro se appeal followed.

# Discussion and Decision

[5] Our standard of review regarding post-conviction proceedings is well settled.

> Post-conviction proceedings are civil proceedings in which the defendant must establish his claims by a preponderance of the evidence. Post-conviction proceedings do not offer a super appeal, rather, subsequent collateral challenges to convictions must be based on grounds enumerated in the post-conviction rules. Those grounds

are limited to issues that were not known at the time of the original trial or that were not available on direct appeal. Issues available but not raised on direct appeal are waived, while issues litigated adversely to the defendant are *res judicata*. Claims of ineffective assistance of counsel and juror misconduct may be proper grounds for post-conviction proceedings.

Because the defendant is appealing form the denial of post-conviction relief, he is appealing from a negative judgment and bears the burden of proof. Thus, the defendant must establish that the evidence, as a whole, unmistakably and unerringly points to a conclusion contrary to the post-conviction court's decision. In other words, the defendant must convince this Court that there is *no* way within the law that the court below could have reached the decision it did. We review the post-conviction court's factual findings for clear error, but do not defer to its conclusions of law.

*Wilkes v. State*, 984 N.E.2d 1236, 1240 (Ind. 2013) (citations and quotation marks omitted). "We will not reweigh the evidence or judge the credibility of witnesses, and will consider only the probative evidence and reasonable inferences flowing therefrom that support the post-conviction court's decision." *Hinesley v. State*, 999 N.E.2d 975, 981 (Ind. Ct. App. 2013), *trans. denied* (2014). Although we observe that Eastwood is proceeding pro se, such litigants are held to the same standard as trained counsel and are required to follow procedural rules. *Evans v. State*, 809 N.E.2d 338, 344 (Ind. Ct. App. 2004), *trans. denied*

## Section 1 – Eastwood has not demonstrated that he was denied the effective assistance of trial counsel.

[6] Eastwood contends that the postconviction court erred in finding that he was not denied the effective assistance of trial counsel. We review claims of ineffective assistance of counsel under the two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). *Bieghler v. State*, 690 N.E.2d 188, 192 (Ind.

1997), *cert. denied* (1998). To prevail on a claim of ineffective assistance of counsel, a petitioner must first demonstrate that counsel's performance was deficient. *Garrett v. State*, 992 N.E.2d 710, 718 (Ind. 2013). "This requires a showing that counsel's representation fell below an objective standard of reasonableness and that counsel made errors so serious that counsel was not functioning as 'counsel' guaranteed to the defendant by the Sixth Amendment." *Id.* Second, a petitioner must show that the deficient performance prejudiced the defense. *Id.* To establish prejudice, the petitioner must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *French v. State*, 778 N.E.2d 816, 824 (Ind. 2002). Isolated poor strategy, inexperience, or bad tactics do not necessarily constitute ineffective assistance. *Clark v. State*, 668 N.E.2d 1206, 1211 (Ind. 1996), *cert. denied* (1997).

[7] When considering a claim of ineffective assistance of counsel, we "strongly presume that counsel provided adequate assistance and exercised reasonable professional judgment in all significant decisions." *Morales v. State*, 19 N.E.3d 292, 297 (Ind. Ct. App. 2014), *trans. denied* (2015). "[C]ounsel's performance is presumed effective, and a defendant must offer strong and convincing evidence to overcome this presumption." *Williams v. State*, 771 N.E.2d 70, 73 (Ind. 2002).

[8] It is pertinent to acknowledge that the judge who presided over Eastwood's original trial is also the judge who presided over the postconviction proceedings. We have stated that a postconviction court's findings and

judgment should be entitled to "greater than usual deference" when the postconviction judge is the same judge who conducted the original trial. *Hinesley*, 999 N.E.2d at 982; *McCullough v. State*, 973 N.E.2d 62, 75 (Ind. Ct. App. 2012), *trans. denied* (2013). In such cases, "the judge is uniquely situated to assess whether trial counsel's performance fell below an objective standard of reasonableness and whether, but for counsel's unprofessional conduct, there was a reasonable probability that a different verdict would have been reached." *Hinesley*, 999 N.E.2d at 982. With this in mind, we turn to Eastwood's numerous claims of ineffective assistance.

## Section 1.1 – Counsel's trial preparation was adequate.

[9] Eastwood contends that trial counsel failed to adequately prepare him for trial. Specifically, Eastwood claims that counsel "never spent more than thirty minutes" with him to discuss the case and "never discussed [t]rial strategy" with him or his wife or prepared him to testify. Appellant's Amended Br. at 6. However, trial counsel's testimony at the postconviction hearing contradicts Eastwood's claims. Counsel testified that he spent fifty total hours preparing for Eastwood's trial. Of that time, counsel met with Eastwood in jail "several times" and "spent many hours reviewing testimony" with Eastwood. PCR Tr. at 10. They discussed "what evidence would be coming in against him," "generally what a trial looks like," and "whether he wanted to [testify] or not." *Id*. at 10-12. After determining that it was likely that Eastwood would testify at trial, counsel prepared Eastwood by discussing with him "what he should and

shouldn't say." *Id*. at 12. Counsel also stated that he met "often" with Eastwood's wife prior to trial to discuss the trial and trial strategy. *Id*.

[10] After considering "the conflicting testimony in this regard between trial counsel and the Petitioner" and after reviewing the course of the proceedings including pretrial motions filed by counsel and counsel's examination of witnesses and trial strategy in general, the postconviction court concluded that Eastwood failed to prove that his counsel's trial preparation was deficient. PCR App. at 227. We are compelled to agree with the postconviction court, as Eastwood has not demonstrated that the evidence as a whole unmistakably and unerringly points to a contrary conclusion.

## Section 1.2 – Counsel was attentive.

[11] Eastwood next asserts that trial counsel was inattentive during trial. Eastwood alleges that his counsel replied to and/or sent text messages and emails during testimony and also that counsel was obviously distracted or not paying attention at trial because he admittedly "missed" some valid hearsay objections. Appellant's Amended Br. at 6. Regarding text messages and email, trial counsel denied sending or responding to text messages or email at any time during trial testimony. The postconviction court found trial counsel credible on this issue, and it is well settled that we do not reweigh evidence or judge the credibility of witnesses on appeal. *Hinesley*, 999 N.E.2d at 981. Similarly, as for the "missed" hearsay objections, which we will discuss more fully later, trial counsel denied missing any valid objections during trial due to distraction or inattentiveness. Indeed, our review of the trial record reveals that trial counsel

was engaged and attentive during trial. We agree with the postconviction court that Eastwood has failed to show that counsel preformed deficiently in this regard.

## Section 1.3 – Lack of opportunity defense was not viable.

[12] Eastwood complains that trial counsel was ineffective for failing to obtain and review daycare and school records, which Eastwood claims could have been presented at trial to support a lack of opportunity defense to the molestation allegations. Again, trial counsel's postconviction testimony belies Eastwood's claims. Trial counsel stated that he recalled reviewing and discussing the daycare and school records with Eastwood's wife. PCR Tr. at 43-45. It was counsel's recollection that, based upon the broad time span for the molestations alleged by the State in the charging information, the records in no way negated Eastwood's opportunity to molest H.S., and therefore lack of opportunity was not going to be a viable defense.

[13] We note that Eastwood did not submit the records to the postconviction court or present any evidence to indicate that the records would have supported a lack of opportunity defense or were otherwise exculpatory. Accordingly, we agree with the postconviction court's conclusion that, even assuming that trial counsel failed to obtain, review, and introduce the records at trial, Eastwood has failed to establish that he was prejudiced by such failures. Eastwood has shown neither deficient performance nor prejudice.

# Section 1.4 – Counsel was not ineffective for electing to not call Jackie Eastwood as a witness.

Eastwood next contends that trial counsel rendered ineffective assistance in electing to not call Eastwood's wife, Jackie, as a witness. In the context of an ineffective assistance of counsel claim, a decision regarding what witnesses to call is a matter of trial strategy which an appellate court will not second-guess. *McCullough*, 973 N.E.2d at 83. During the postconviction hearing, counsel testified that his decision not to call Jackie as a witness was based primarily on an attempt to minimize the impact of the evidence of Eastwood's flight and eight-year absence from Indiana. Eastwood counters that other witnesses had already been permitted to testify about his flight and absence from Indiana and that since his counsel apparently had "no strategy to hide 8 year gap" between the charges being filed and his arrest, not calling Jackie as a witness cannot be explained as a legitimate trial strategy. Appellant's Amended Br. at 8.

To the contrary, counsel explained that he believed that Jackie's testimony might do more harm than good because counsel would not be able to control her cross-examination. The record indicates that Jackie was actively involved in helping Eastwood evade authorities for over eight years and that she was charged criminally for that involvement. Under the circumstances, we agree with the postconviction court that trial counsel's decision not to call Jackie as a

witness was a legitimate tactical determination and did not constitute ineffective assistance.[1]

## Section 1.5 – Counsel's failure to object to certain hearsay evidence did not constitute deficient performance.

[16] Eastwood asserts that trial counsel rendered ineffective assistance by failing to object, sometimes deliberately, to what the State concedes was inadmissible hearsay evidence, namely, out-of-court statements made by H.S.[2] In order to prove ineffective assistance premised upon counsel's failure to object, the petitioner must show that an objection would have been sustained if it had been made, that the failure to object was unreasonable, and that he was prejudiced. *Potter v. State*, 684 N.E.2d 1127, 1134 (Ind. 1997).

[17] Trial counsel testified that he deliberately did not object to most of the inadmissible hearsay because his main defense strategy was to highlight the inconsistent stories told by H.S. regarding the alleged molestations. Counsel stated that he wanted all of her prior versions and statements about the alleged

---

[1] We note that Eastwood maintains that there was evidence that he fled Indiana after he was charged due to "terroristic threats" he received and that his trial counsel should have demanded that the trial be stopped because those "Federal crimes … should have been investigated before the trial was allowed to proceed any further." Appellant's Amended Br. at 9. Eastwood fails to cite authority or make a cogent argument on this issue, and therefore we deem the issue waived. *See* Ind. Appellate Rule 46(A)(8) (requiring that argument section of appellant's brief contain contentions supported by cogent reasoning and citations to authorities, statutes, and the appendix/record). *See also Smith v. State*, 822 N.E.2d 193, 203 (Ind. Ct. App. 2005) ("pro se litigants are held to the same standard regarding rule compliance as are attorneys duly admitted to the practice of law and must comply with the appellate rules to have their appeal determined on the merits."), *trans. denied*.

[2] Hearsay is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Ind. Evidence Rule 801(c).

molestations to be heard by the jury "because they fit the strategy that she had changed her story" and that her accusations were "inherently unbelievable." PCR Tr. at 13. Regarding trial counsel's failure to object to inadmissible hearsay, the postconviction court specifically concluded:

> 13. Although trial counsel did miss some hearsay objections and did exhibit some confusion as to the interplay between the right to confrontation and hearsay, overall his decisions to object or not to hearsay statements were considered decisions in furtherance of his trial strategy of demonstrating inconsistencies among the victim's versions of the crimes and the implausibility of some of the victim's claims. Trial counsel effectively pursued this strategy.

PCR App. at 224.

[18]     As our supreme court has stated, "[e]ven assuming that an objection would have been sustained, a failure to object does not constitute ineffective assistance of counsel if the decision to remain silent 'could well have been a strategic decision by counsel.'" *Pennycuff v. State*, 745 N.E.2d 804, 815 (Ind. 2001) (quoting *Charlton v. State*, 702 N.E.2d 1045, 1051 (Ind. 1998)). Here, although trial counsel's objections to inadmissible hearsay would have been sustained by the trial court had the objections been made, we agree with the postconviction court that trial counsel's failure to object was part of his trial strategy and not unreasonable under the circumstances. Moreover, Eastwood has not demonstrated that but for counsel's failure to object to the inadmissible hearsay evidence, there is a reasonable probability that the jury's verdict would have been different. His ineffective assistance of counsel claim fails.

# Section 1.6 – Counsel's failure to object to Deputy Marshal Kell's testimony did not constitute ineffective assistance.

At trial, Deputy Marshal Pete Kell testified regarding statements Eastwood made to him at Eastwood's Illinois residence immediately after Eastwood was taken into custody. Eastwood claims that any statements he made were inadmissible pursuant to Indiana Evidence Rule 617, and therefore that his counsel was ineffective in failing to object to Kell's testimony. Eastwood is mistaken. Indiana Evidence Rule 617 provides in relevant part:

> (a) In a felony criminal prosecution, evidence of a statement made by a person during a Custodial Interrogation in a Place of Detention shall not be admitted against the person unless an Electronic Recording of the statement was made, preserved and is available at trial, except upon clear and convincing proof of any one of the following:
>
> …
>
> (4) The statement was made during a Custodial Interrogation that both occurred in, and was conducted by officers of, a jurisdiction outside Indiana;

First, Evidence Rule 617 does not apply here because Deputy Marshal Kell's alleged "Custodial Interrogation" of Eastwood occurred in Eastwood's residence and not in a "Place of Detention." Moreover, by its plain language, Evidence Rule 617 does not apply to statements made during a custodial interrogation that both occurred in, and was conducted by officers of, a jurisdiction outside Indiana. The alleged interrogation here occurred in Illinois and was conducted by a federal agent. Under the circumstances, we agree with the postconviction court that Eastwood has not demonstrated that his

statements to Deputy Marshal Kell were inadmissible or that an objection to Kell's testimony would have been sustained. Therefore, trial counsel cannot be found ineffective for failing to object. *See Potter*, 684 N.E.2d at 1134.

## Section 1.7 – Additional claims of ineffective assistance of counsel not raised to the postconviction court are waived.

Eastwood makes two additional claims of ineffective assistance of trial counsel. Specifically, Eastwood contends that trial counsel was ineffective in failing to introduce a certain letter into evidence and in failing to alert the jury regarding alleged amendments made to his class A felony child molesting charge. However, Eastwood did not raise these additional claims in his petition for postconviction relief or otherwise present any evidence regarding these claims to the postconviction court. Issues that are not raised in the petition for postconviction relief may not be raised for the first time on postconviction appeal. *Allen v. State*, 749 N.E.2d 1158, 1171 (Ind. 2001) (citing Ind. Post-Conviction Rule 1(8)). Thus, Eastwood's claims of ineffective assistance of counsel that were not raised to the postconviction court are waived.

## Section 2 – Eastwood's freestanding claims of error are waived.

In addition to his claims of ineffective assistance of trial counsel, Eastwood raises several freestanding claims of trial court error that, although available, he neither raised on direct appeal nor to the postconviction court. "Post-conviction procedures do not provide a petitioner with an opportunity to present freestanding claims that contend the original trial court committed

error." *Wrinkles v. State*, 749 N.E.2d 1179, 1187 n.3 (Ind. 2001). "Such claims are available only on direct appeal." *Lambert v. State*, 743 N.E.2d 719, 726 (Ind. 2001). Moreover, as we already noted, issues that are not raised in the petition for postconviction relief may not be raised for the first time on postconviction appeal. *Allen*, 749 N.E.2d at 1171. Eastwood has waived these claims as well.

## Conclusion

[23] Eastwood has not met his burden to show that the evidence, as a whole, unmistakably and unerringly points to a conclusion contrary to the postconviction court's denial of his petition. Consequently, we affirm the denial of his petition for postconviction relief.

[24] Affirmed.

May, J., and Mathias, J., concur.